UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROYNELL DAMON WILLIAMS,

        Plaintiff,                      Civil Action No. 11-cv-11694

       v.                           District Judge Victoria A. Roberts
                                              Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 11]**

Plaintiff Roynell Damon Williams brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties filed summary judgment motions (Dkts. 10, 11), which are presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (Dkts. 3, 11).

**I. RECOMMENDATION**

For the reasons set forth below, this Court finds that the Administrative Law Judge's decision is supported by substantial evidence and conforms with the relevant legal standards. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## II. REPORT

### A. Procedural History

Plaintiff filed an application for disability on November 5, 2007, alleging that he became unable to work on March 31, 2007. (Tr. 139-45.)  The Commissioner initially denied Plaintiff's disability application on January 23, 2008. (Tr. 100-107.)  Plaintiff then filed a request for a hearing, and on July 14, 2009, he appeared with counsel before Administrative Law Judge ("ALJ") Ethel Revels, who considered the case *de novo*.  (Tr. 28-97.)  In a November 25, 2009 decision, the ALJ found that Plaintiff was not disabled.  (Tr. 13-22.)  The ALJ's decision became the final decision of the Commissioner on March 29, 2011 when the Appeals Council denied Plaintiff's request for review.  (Tr. 1-3.)  Plaintiff filed this suit on April 19, 2011.

### B. Background

Plaintiff was 37 years old at the time of the administrative hearing in this matter.  (Tr. 19, 30.)  He has a GED, and most recently worked in retail at Meijers.  (Tr. 171, 226.)

#### 1. Plaintiff's Testimony

At the July 14, 2009 hearing before the ALJ, Plaintiff testified regarding his back pain.  (Tr. 37.)  His back pain is the result of two separate injuries on the job.[1]  (Tr. 38, 42-43.)  Plaintiff testified that on a typical day he lays in bed and watches television.  (*Id*.)  The only thing that

---

[1] There are many explanations of these injuries; none of which Plaintiff testified to at any length.  (Tr. 38, 42-43.)  On March 31, 2007, Plaintiff told a Physicians Assistant at Concentra Medical Centers that he "was sweeping the parking lot and stepped into a muddy hole." (Tr. 226.)  As a result, he lost his balance and fell on his "lower back and tailbone."  (*Id*.)  Plaintiff told Dr. Nathan L. Gross, during an Independent Medical Exam ("IME"), that in February of 2006 "[h]e was pushing 20 carts . . . [and] had a pain in the lower back."  (Tr. 255.)  Plaintiff goes on to tell Dr. Gross that on March 31, 2007, "he was on a hill on the exterior premises picking up papers . . . . [and] as he turned, he misstepped [sic] in a muddy area of ground surface and he ended up falling landing on his buttocks [and] his lower back."  (*Id*.)

2

relieves Plaintiff's pain is  hot baths.  (Tr. 44-45.)  He takes baths two to three times a day.  (*Id*.)
Plaintiff testified to seeing a number of doctors regarding his pain, including Dr. Pashad and Dr.
Kim.  (46-47.)  Plaintiff testified that he can stand for about five minutes at a time without his cane.
(Tr. 57.)  He can stand for about ten minutes with his cane.  (*Id*.)  He can sit for five minutes at a
time.  (*Id*.)

   *2.  Medical Evidence*[2]

   Plaintiff received treatment from Concentra Medical Centers from March 31, 2007 through
June 8, 2007.  (Tr. 226-252.)

   Plaintiff first visited  Concentra on the day of one of his alleged injuries – March 31, 2007.
(Tr. 226.)  At that time, Plaintiff was 5'7" and weighted 322 pounds.  (*Id*.)  Physician Assistant
William Rogers initially evaluated Plaintiff.  (*Id*.)  PA Rogers assessed Plaintiff with a back/buttock
contusion and a lumbar strain.  (Tr. 227.)  He suggested physical therapy daily for one to two weeks,
and modified activity as follows: 1) Off work rest of shift; 2) No lifting over five pounds; 3) No
pushing/pulling over five pounds of force; and 3) Should be sitting 50 percent of time.  (Tr. 227.)

   Plaintiff returned to Concentra on April 3, 2007.  (Tr. 228.)  Physician Assistant Ron
Dobrzynski evaluated Plaintiff.  He noted that Plaintiff was "grossly obese," and had a tendency for
"symptom magnification."  (*Id*.)  He assessed Plaintiff with a contusion of the buttocks and lumbar
region, and a lumbosacral strain.  (*Id*.)  He suggested physical therapy three to five times for the next
one to two weeks, and modified activity as follows: 1) No lifting over five pounds; 2) No
pushing/pulling over ten pounds of force; 3) Sit/stand option while at work; and 4) No climbing.

---

   [2] In his brief, Plaintiff makes it clear that the major disability  he is asserting concerns his
back.  (Dkt. 10, Pl.'s Mot. Summ. J. at 5-9.)  Therefore, this Court's summary of the relevant
medical evidence reflects this assertion.

(Tr. 229.)

Plaintiff saw PA Dobrzynski again on April 11, 2007.  (Tr. 230.)  PA Dobrzynski noted that Plaintiff claimed he was doing "some home stretches but I suspect not."  (*Id*.)  He also noted that he suspected "symptom magnification due to all the groaning with normal motion." (*Id*.)  He assessed Plaintiff with a contusion of the buttocks and lumbar region and a sacrolillac strain.  (*Id*.)  He suggested the same physical therapy and modifications as he suggested on Plaintiff's previous visit.  (Tr. 231.)  He also stated that Plaintiff should return to work. (Tr. 232.)

Plaintiff saw Dr. Eugene K. Sawyer on April 18, 2007.  (Tr. 233.)  He assessed Plaintiff with a lumbosacral stain and back pain.  (*Id*.)  Dr. Sawyer gave Plaintiff the following restrictions: 1) No lifting over ten pounds; 2) No prolonged standing/walking longer than what is tolerated by the patient; 3) No squatting; 4) No kneeling; 5) No climbing; and 6) Sit as needed. (Tr. 234.)  He also stated that Plaintiff should return to work.  (Tr. 235.)

Plaintiff saw PA Dobrzynski on April 24, 2007.  (Tr. 236.)  Again PA Dobrzynski stated that he suspected "some symptom magnification."  (*Id*.)  He assessed a sacrolillac strain and changed his modified activity status as follows: 1) No lifting over fifteen pounds; 2) No prolonged standing/walking longer than tolerated and should be able to change positions as needed; and 3) No climbing.  (*Id*.)

Plaintiff saw PA Dobrzynski again on May 4, 2007.  (Tr. 238.)  PA Dobrzynksi noted that "[p]atient claims he is trying to loose weight and is 'exercising at home' – but I doubt either."  (*Id*.)  He again suspected "symptom magnification." (*Id*.)  He assessed Plaintiff with sacrolillac strain and morbid obesity.  (*Id*.)  He assigned Plaintiff the following modified activity: 1) No prolonged standing/walking longer than tolerated; and 2) No lifting over twenty pounds.  (*Id*.)  He also stated

4

that Plaintiff should return to work.  (Tr. 240.)

Plaintiff saw PA Dobrzynski again on May 18, 2007. (Tr. 241.)  He again noted Plaintiff's morbid obesity and symptom magnification.  (*Id*.)  He assigned Plaintiff the same modified activity as on May 4, 2007. (Tr. 242.)  He also stated that Plaintiff should return to work.  (Tr. 243.)

Plaintiff saw PA Dobrzynski again on May 25, 2007.  (Tr. 244.)  Plaintiff told PA Dobrzynski that he had been to physical therapy on six occasions[3], but that he noticed no improvement.  (*Id*.)  PA Dobrzynski noted that Plaintiff exhibited "[l]ots of drama and guarding." (*Id*.)  He also noted that he exhibited "symptom magnification."  (*Id*.)  He assessed Plaintiff with a sacrolillac strain.  (*Id*.)  PA Dobrzynksi suggested a "possible IME due to failure to improve in a realistic time frame and a poorly motivated young, obese male."  (*Id*.)  He assigned Plaintiff the same modified activity as on May 4, 2007, and told him to return to work.  (Tr. 245-46.)

Plaintiff saw Dr. Stephen D. Daly on June 1, 2007.  (Tr. 247.)  Dr. Daly noted that "[p]atient has not been working because he chose not to work."  (*Id*.)  He ordered an MRI of the lumbar spine for an upcoming IME.  (*Id*.)  He assigned the following modified activity to Plaintiff: 1) No lifting over twenty pounds; 2) No bending more than ten times per hour; and 3) No pushing/pulling over twenty pounds of force. (Tr. 248.)  He told Plaintiff to return to work. (Tr. 249.)

The very next day, Plaintiff went to the Sinai-Grace Emergency Room for back pain.  (Tr. 279.)  The ER doctor noted a "[n]egative examination of the lumbar spine." (*Id*.)

On June 8, 2007, Plaintiff went to St. Mary's Hospital in Livonia complaining of back pain. (Tr. 223.)  The Emergency Room Physician ordered an x-ray, but the results were limited due to

---

[3] According to the record, Plaintiff attended only one physical therapy appointment at Physiotherapy Associates despite being referred for four appointments.  (Tr. 221- 222.)

Plaintiff's "body habitus." (Tr. 225.) Plaintiff was discharged, and told to get an outpatient MRI, and follow-up with his workers compensation doctors. (Tr. 224.)

Plaintiff saw Dr. Daly that same day at 1:27 p.m. (Tr. 250.) Plaintiff told Dr. Daly that he had been to the ER on June 6, 2007, as opposed to that same day. (*Id*.) Dr. Daly assessed Plaintiff with a sacroiliac strain, and assigned the following modified activity: 1) No lifting over five pounds; 2) No pushing/pulling over five pounds of force; and 3) Sit or stand as tolerated. (*Id*.) Dr. Daly told Plaintiff to follow up with his IME on June 13, 2007. (Tr. 251.) He told Plaintiff to return to work. (Tr. 252.)

Dr. Nathan Gross performed an IME on Plaintiff on June 13, 2007. (Tr. 254-58.) Dr. Gross noted that Plaintiff "does a lot of moaning and groaning during the physical examination. He indicates pain when I simply lightly touch the skin across the lower lumbar area." (Tr. 257.) Dr. Gross performed an EMG that did not detect any abnormality. (*Id*.) Dr. Gross also ordered an x-ray of Plaintiff's hip, and found no abnormalities. (Tr. 253.) Dr. Gross also ordered an MRI of Plaintiff's "lumbosacral spine," and found that the types of changes depicted in Plaintiff's spine were "degenerative," and not "occupational." (Tr. 263.) Dr. Gross concluded that "there would be no harm in him being employed provided he could be allowed postural change and refrain from any repetitive twisting and bending at the waist or lifting more than twenty pounds." (Tr. 258.)

Plaintiff also treated with chiropractors for his back pain in July and August of 2007. (Tr. 302-25.) On August 15, 2007, Chiropractor Danette Cole indicated that "patient is considered totally disabled at this time from any physical activities at home or work including household chores and caring for children." (Tr. 322.) On November 13, 2007, Chiropractor David Katz concluded: "Based on the patient's continued and constant complaints over a prolonged period of time since the

accident, we believe this patient's condition is permanent in nature." (Tr. 327.)

Dr. Pasha treated Plaintiff from September 10, 2007 through January 9, 2008. (Tr. 334-347.) Dr. Pasha treated Plaintiff's back pain, obesity, asthma, and GERD. (*Id*.) Dr. Pasha recommended diet and exercise for Plaintiff's back pain. (Tr. 336, 339, 343.)

Plaintiff had another IME performed by Dr. Robert A. Krasnick on August 14, 2008. (Tr. 348.) Dr. Krasnick concluded:

> In regards to work, he cannot return to work as a utility worker at Meijer Incorporated. He is capable of work with restrictions that would include no bending or twisting, a sit to stand option, no prolonged standing or walking, no lifting greater than five pounds. He would not be able to climb steps or walk long distances.

(Tr. 352.)

Dr. Wook Kim gave Plaintiff an SI Joint Injection on July 9, 2009. (Tr. 381-82.) Dr. Kim noted that "I emphasized the importance of weight control which could contribute to his injury." (Tr. 382.)

### 3. Vocational Expert's Testimony

Vocational Expert ("VE") Richard Sitlawski testified at the hearing. (Tr. 65.) The ALJ asked the VE to assume the following hypothetical individual:

> I would like for you to assume a person the claimant's age, education level, and work experience. Assume also that a hypothetical claimant needs a relatively clean air environment, needs work that does not require repetitive bending, that work must not be at hazardous heights or around dangerous machinery, that work must not require climbing of stairs, that work also must not require squatting, kneeling, crouching, crawling, no repetitive twisting, no overhead reaching. The hypothetical claimant also needs a sit/stand option. That work must also be simple, repetitive type of tasks, because there are moderate limitations in ability to maintain concentration for extended periods, due to pain, as well as to carry out detailed instructions due to pain and depression. . . . and there's also use of a cane for ambulating.

7

(Tr. 91.)

The ALJ did not include a lifting restriction in the hypothetical.  (Tr. 91.)  The VE testified that these restrictions would limit Plaintiff to work within the light to sedentary level.  (Tr. 91-92.) At the light level, such an individual could perform the following jobs: small parts assembler, inspector/checker/sorter jobs, cashiering jobs, receptionist/door greeter.  (Tr. 66.)  The VE testified that there were 1,700, 2,000, 6,000 and 2,000 of these jobs available in southeastern Michigan respectively.  (Tr. 92.)  At the sedentary level, such an individual could perform the following jobs: clerical handling jobs, inspecting and checking jobs, small parts assembler jobs and security services jobs.  (*Id*.)  The VE testified that there were 4,000, 2,000, 2,000 and 4,000 of these jobs available in southeastern Michigan respectively.

On questioning by Plaintiff's attorney regarding a lifting limitation of no greater than five pounds, the VE testified that Plaintiff would then be placed at the sedentary level.  (Tr. 93.)  Upon further questioning, the VE testified that if Plaintiff needed to use a cane to stand, his jobs would be limited to about 1,000 inspector/checker jobs and 4,000 security services jobs.  (Tr. 94.)  The VE also testified that if the Plaintiff had to lie down at unscheduled times during the course of an eight hour work day most, if not all the jobs, would be eliminated.  (*Id*.)  Lastly, the VE testified that if the Plaintiff had to be absent more than two days a month for medical treatment, it would be problematic for obtaining and retaining employment. (*Id*.)

### C.  Framework for Disability Determinations

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines

8

"disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to
> last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are
> denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments
> that "significantly limits . . . physical or mental ability to do basic work activities," benefits
> are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe
> impairment that is expected to last for at least twelve months, and the severe impairment
> meets or equals one of the impairments listed in the regulations, the claimant is conclusively
> presumed to be disabled regardless of age, education, or work experience.

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied
> without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other
> work exists in the national economy that plaintiff can perform, in view of his or her age,
> education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th

Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the

analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers

to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir.

1994).

**D.  The Administrative Law Judge's Findings**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 31, 2007.  (Tr. 15.)  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, gastroesophogeal reflux disorder, obesity, sleep apnea, asthma and hypertension.  (*Id.*)  Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment.  (Tr. 16.)  Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform:

> Sedentary work as defined in 20 CFR § 404.1567(a) and § 416.967(a) except: the claimant needs a relatively clean air environment; no repetitive bending; no work at hazardous heights or around dangerous machinery; no work involving climbing of stairs; no squatting, kneeling, crouching or crawling; no repetitive twisting; no overhead reaching; requires a sit/stand option.  The work must be simple repetitive tasks due to moderate limitations in ability to maintain concentration for extended periods, as well as moderate limitations in ability to understand, remember, carry out detailed instructions due to pain and depression; and allow for the use of a cane for ambulating.

(Tr. 19.)

At step four, the ALJ found that Plaintiff could not  perform his past relevant work as a retail utility worker.  (*Id.*)  At step five, the ALJ found that jobs existed in "significant numbers in the national economy that" Plaintiff could perform.  (*Id.*)

**E.  Standard of Review**

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence

in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal

quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an

agency has failed to adhere to its own procedures, we will not remand for further administrative

proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights

because of the agency's procedural lapses." (internal quotation marks omitted)).   Substantial

evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).   In

deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499

F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the

reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, this Court is

limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d

at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).   The Court

"may look to any evidence in the record, regardless of whether it has been cited by the Appeals

Council." *Heston*, 245 F.3d at 535.   There is no requirement, however, that either the ALJ or this

Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc.

Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without

directly addressing in his written decision every piece of evidence submitted by a party." (internal

quotation marks omitted)).   If the Commissioner's decision is supported by substantial evidence, "it

must be affirmed even if the reviewing court would decide the matter differently and even if

11

substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

**F.  Analysis**

*1.  The ALJ Complied with the Treating Source Rule*

Plaintiff argues that the ALJ committed reversible legal error by failing to give proper weight to Plaintiff's treating physicians at Concentra Medical Centers – Drs. Sawyer and Daly – and by failing to even acknowledge the treating physician rule.  (Dkt. 10, Pl.'s Mot. Summ. J. at 10-11.) The Commissioner responds that the ALJ's sedentary RFC finding comports with the evidence from Concentra Medical Centers, and that Dr. Sawyer and Dr. Daly were not treating physicians.  (Dkt. 11, Def.'s Mot. Summ. J. at 13-15.)

First, this Court notes that the ALJ specifically wrote: "The undersigned has also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and § 416.927 and 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 16.)  These regulations and rulings set forth the treating source rule.  *See* 20 C.F.R. §§ 404.1527; 416.927.  Therefore, although there is no specific procedural requirement that an ALJ must explicitly state the treating source rule, the ALJ did in fact cite the rule.  Consequently, despite Plaintiff's contention to the contrary, the ALJ did acknowledge the rule..

Second, this Court notes that under the treating source rule, a treating source is defined by the regulations as "your own physician, psychologist, or other acceptable medical source who

provides you, or has provided you with medical treatment or evaluation and *who has, or has had, an ongoing treatment relationship with you*." 20 C.F.R. § 404.1502 (emphasis added). Importantly, a physicians assistant is not an "acceptable medical source." 20 C.F.R. §§ 404.1513(a), 416.913(a). A chiropractor, likewise, is not an acceptable medical source. *Id*. In addition, the Sixth Circuit has held that a medical source cannot be a treating source after only one visit. *Kornecky v. Comm'r Soc. Sec.*, 167 F. App'x. 496, 506-07 (6th Cir. 2006). Indeed, the Sixth Circuit has held that often times two or three visits are not sufficient to satisfy the treating source rule. *Id*. As the *Kornecky* Court explained:

> "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once . . . ." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) ("Dr. Ruff examined Mr. Barker on only one occasion, and the rationale of the treating physician doctrine simply does not apply here.").

> [Plaintiff] cites no authority where a federal court has found a source to be a treating source after only one visit. However, a plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship. *See, e.g., White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005) (occupational medicine specialist who evaluated claimant only once was not a treating physician). Indeed, depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship. *See, e.g., Cunningham v. Shalala*, 880 F. Supp. 537, 551 (N.D. Ill. 1995) (where physician saw claimant five times in two years, it was "hardly a foregone conclusion" that his opinion should be afforded great weight).

*Id.*

Applying this case law to Plaintiff's case, Dr. Sawyer and Dr. Daly are not Plaintiff's treating sources. Plaintiff saw Dr. Sawyer on one occasion since the onset of his injury in March of 2007.

13

(Tr. 233.)  Plaintiff saw Dr. Daly on two occasions.  (Tr. 274, 251.)  Neither doctor had on ongoing treatment relationship with Plaintiff as required by the regulations.  20 C.F.R. § 404.1502.  As such, their opinions are not entitled to controlling weight.[4]

### 2. Substantial Evidence Supports the ALJ's Residual Functional Capacity Assessment and Decision Denying Benefits

Plaintiff argues that substantial evidence does not support the ALJ's residual functional capacity ("RFC") assessment because the ALJ gave improper weight to the opinions of the two doctors that performed IMEs on Plaintiff for his workers compensation claim.  (Dkt. 10, Pl.'s Mot. Summ. J. at 9-10, 11-12.)  Plaintiff also argues that substantial evidence does not support the ALJ's ultimate decision denying benefits because the ALJ found Plaintiff capable of only a reduced range of sedentary work.  (*Id*. at 13.)  The Commissioner responds that substantial evidence supports the ALJ's RFC because neither IME physicians were treating sources, and the ALJ correctly followed Social Security Ruling 96-9p regarding a reduced range of sedentary work.  (Dkt. 11, Def.'s Mot. Summ. J. at 12, 15-18.)

Generally, an ALJ gives "more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."  20 C.F.R. § 404.1527(d)(1).  Both Dr. Gross and Dr. Krasnick were examining physicians.  The ALJ noted that Dr. Gross examined Plaintiff "in regards to an injury he allegedly sustained at work."  (Tr. 17.)  Likewise, the ALJ noted that Dr. Krasnick "examined the [Plaintiff] at the request of the claimant's attorney in his workers compensation case."  (Tr. 18.)  Plaintiff argues that this distinction by the ALJ is notable given that

---

[4] Plaintiff clearly is advocating for this Court to consider Dr. Daly a treating source since Dr. Daly's last recorded restriction limited Plaintiff to no more than five pounds.  (Dkt. 10, Pl.'s Mot. Summ. J. at 12.)  This is the most restrictive limitation on the record.  (Tr. 251, 352.)  Notably, Plaintiff's treating physician – Dr. Pasha – did not give *any* lifting restriction on the record but instead advised Plaintiff to exercise and lose weight.  (Tr. 336, 339, 343.)

14

she specifically stated that Dr. Krasnick was hired by Plaintiff's attorney. (Dkt. 10, Pl.'s Mot. Summ. J. at 12.) However, this Court finds that the ALJ gave both doctors proper weight. Indeed, the ALJ credited both doctors' restrictions with the exception of their lifting restrictions. (Tr. 16-18.) Dr. Gross found a lifting restriction of no more than twenty pounds. (Tr. 17.) Dr. Krasnick gave a lifting restriction of no more than five pounds. (Tr. 18.) The ALJ gave Plaintiff a restriction of no more than ten pounds at a time. (Tr. 16.) There is simply no evidence that the ALJ unfairly credited one examining source over the other. In addition, it is notable that both examining sources stated on the record that Plaintiff was capable of working. (Tr. 258, 352.)

Lastly, S.S.R. 96-9p states:

> 1. An RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare.

> 2. However, a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled.' *If the performance of past relevant work is precluded by an RFC for less than the full range of sedentary work, consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience.*

S.S.R. 96-9p, 1996 WL 374185 (emphasis added.)

This is precisely what the ALJ did in this case. The ALJ fist found that Plaintiff was capable of less than a full range of sedentary work.[5] (Tr. 16-19.) Then, she found that Plaintiff could not perform his past relevant work. (Tr. 19.) Then, pursuant to 96-9p, she asked a VE to testify

_____

[5] Notably, the ALJ limited Plaintiff to the sedentary level but stated that Plaintiff "could perform work at the light exertional level, but for his obesity." (Tr. 19.) The ALJ correctly followed S.S.R. 02-1p, stating, "obesity must be considered to determine if it alone or in combination with other impairments significantly limits an individual's physical or mental ability to do basic work activities. In this case the [Plaintiff's] obesity, in combination with other impairments, limits his ability to do basic work activity." (*Id.*)

regarding other work in the national economy that Plaintiff could perform.  (Tr. 19-20, 92-94.)
Plaintiff argues that the ALJ did this incorrectly given that the Plaintiff's need for a cane to ambulate
would rule out many jobs the VE found suitable.  (Dkt. 13, Pl.'s Mot. Summ. J. at 13.)  This is
incorrect, however. (Tr. 93-94.)  First, the VE testified that Plaintiff's need for a cane *to stand*, not
to ambulate, would rule out some jobs.  (*Id.*) Second, the VE stated, very clearly, that the jobs that
would remain would be 1,000 inspector/checker jobs and 4,000 security services jobs.  (Tr. 92-94.)
Therefore, the VE's testimony regarding these jobs constitutes substantial evidence on the
availability of suitable work for Plaintiff.  *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (finding
that 1,350 jobs regionally constituted a significant number of jobs).

### G.  Conclusion

For the reasons set forth above, this Court finds that the Administrative Law Judge's decision
is supported by substantial evidence and conforms with the relevant legal standards.  Accordingly,
this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that
Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to 42 U.S.C.
§ 405(g), the decision of the Commissioner be AFFIRMED.

## III. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation
within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).
Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*,
474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States
v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections,
but failing to raise others, will not preserve all the objections a party may have to this Report and

Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  *See* E.D. Mich. LR 5.1.  A copy of any objections is to be served upon this magistrate judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).


s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  March 6, 2012


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 6, 2012.


s/Jane Johnson
Deputy Clerk